IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Joyce Silmon, | ) | Case No.: 05-11298-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Andre M. Toffel, as Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 06-00176-BGC |
| | ) | |
| Joyce Silmon; Tiffanie Mann, | ) | |
| | ) | |
| Defendants. | ) | |

This Memorandum Opinion was not submitted by the Court for publication.

**MEMORANDUM OPINION**

The matters before the Court are:

1. An <u>Application by the Trustee to Employ an Appraiser/Real Estate Agent for the Estate</u> (K. Oliver & Associates) filed on October 2, 2006 (Proceeding No. 27);

2. A <u>Joint Motion for Approval of Compromise</u> filed on November 14, 2006, by the Trustee both in Bankruptcy Case No. 05-11298-BGC-7 (Proceeding No. 44) and in A. P. No. 06-00176-BGC (Proceeding No. 7);

3. The Debtor's <u>Objection to Application to Employ K. Oliver & Associates, Inc. as Real Estate Agent/Appraiser and Objection to Motion to Approve Compromise and Debtor's Request to Close Bankruptcy Case and Refund Remaining Funds to Debtor</u> filed on January 11, 2007 (Proceeding No. 57);

4. A <u>Motion for Relief From Automatic Stay</u> filed on February 22, 2007, by MidFirst Bank (Proceeding No. 65).

After notice, a hearing on the first three matters was held on February 21, 2007. Appearing were Ms. Silmon (without an attorney); Andre Toffel, the trustee; Harrison Willis, the trustee's attorney; and Jon Dudeck for the Bankruptcy Administrator. The matters were submitted on arguments, pleadings, and the records in both Bankruptcy Case No. 05-11298-BGC-7 and Adversary Proceeding No. 06-00176-BGC. No testimony or other evidence was submitted.

After notice, the relief from stay motion was heard on March 28, 2007. Appearing were Ms. Silmon (again without an attorney); Mr. Willis; and Mr. Mark A. Pickens, the attorney for MidFirst. The matter was submitted on arguments; pleadings; and the record in this case. No testimony or other evidence was submitted.[1]

Based on the discussion below, the Court:

1. approves the trustee's employment of a real estate agent;

2. approves the motion for approval of compromise;

3. overrules the debtor's objection to employment of the real estate agent;

4. overrules the debtor's objection to the motion for approve compromise;

5. denies the debtor's request to close this case and for refund of remaining funds; and,

6. continues MidFirst's motion for relief from stay, with the stay remaining in effect.

### A. Findings of Fact

Ms. Silmon filed the pending Chapter 7 bankruptcy petition on October 13, 2005. At the time, she was represented by an attorney.

When she filed her petition, Ms. Silmon listed personal property which she valued at $2,525. That property included a 2004 Toyota Camry automobile and a 2003 Dodge Durango automobile. She also listed her homestead located at 511 Debby Lane, Adamsville, Alabama 35005, which she valued at $78,000. She claimed a $5,000 exemption in the real estate and claimed the personalty totally exempt.

---

[1] The deadline for deciding the motion for relief was extended by order dated August 17, 2007 (Proceeding No. 83) for cause pursuant to 11 U.S.C. § 362(e)(2) until September 21, 2007.

2

Ms. Silmon also listed 11 distinct unsecured, nonpriority debts totaling $26,354.17, a secured debt to MidFirst of $78,000, and a secured debt owed to WFS Financial for $20,000. She did not describe the nature of the secured creditors' collateral; however, Ms. Silmon's statement of intention, which reflects that she intends to reaffirm both secured debts, reveals that MidFirst's debt is secured by a mortgage on her homestead, and that the 2004 Toyota Camry automobile is collateral for WFS's debt.

Because Ms. Silmon's case began as a "no asset" case, creditors were originally requested <u>not</u> to file proofs of claims and no bar date for filing proofs of claims was established.[2]

Ms. Silmon received her chapter 7 discharge pursuant to 11 U.S.C. § 727 on February 3, 2006.

On September 27, 2006, the trustee filed Adversary Proceeding No. 06-00176 against Ms. Silmon and her daughter, Tiffanie Mann. In his complaint, the trustee alleges that the debtor transferred her 2003 Dodge Durango automobile to Ms. Mann post-petition and requests an order directing Ms. Silmon and Ms. Mann to turn that automobile over to him so that he can liquidate it for the benefit of Ms. Silmon's creditors.

On October 2, 2006, the trustee filed an application to employ a real estate agent to evaluate and to sell the debtor's homestead, with payment of a six percent commission if the property is sold by the agent and payment for appraisal services at the rate of $50 an hour, plus expenses, if the property is not sold. The latter provision, for the payment of an hourly rate for appraisal services, plus expenses, was verbally withdrawn and omitted by the trustee at the hearing on the application.

On October 10, 2006, the trustee filed a document entitled "Case Status Change" in which he notified the clerk's office that he had located assets which he intended to reduce to cash for the benefit of the estate and requested that creditors be directed to file proofs of claims. Based on that information, the clerk's office sent out a notice that same date to all creditors directing them to file proofs of claims within 90 days. The 90-day deadline for filing proofs of claims expired on January 8, 2007.

---

[2] The Court notes that the notice of the first meeting of creditors and the notice not to file proofs of claims, was mailed to WFS at the address provided by the debtor in her petition and was returned as undeliverable. A "Notice of Returned Mail" reflecting that fact was sent by the clerk's office to the debtor's attorney, who has since been permitted to withdraw from representing the debtor. However, the record does not reflect that the debtor has provided the clerk's office with a corrected address for WFS, as was requested in the "Notice of Returned Mail." Consequently, it cannot be determined that WFS has been provided the opportunity to file a proof of claim and participate in a distribution in this case.

3

On November 14, 2006, the trustee and Ms. Silmon, <u>through counsel</u>, filed a <u>Joint Motion to Approve Compromise</u> in Adversary Proceeding No. 06-00176. In that document, the parties ask the Court to approve a settlement agreement which provided that the trustee would abandon any interest in the Durango in exchange for payment from Ms. Silmon of $7,000. The agreement specifically provided for Ms. Silmon to pay the agreed amount and for the trustee to relinquish the estate's interest in the automobile <u>prior to</u> the hearing on the joint motion. The motion also provided that the trustee would return whatever money Ms. Silmon had paid to him if the Court did not approve the proposed compromise. The parties informed the Court that Ms. Silmon has paid the trustee $3,000 of the funds due under the settlement agreement.

On December 15, 2006, an order was entered allowing the debtor's attorney, Danita T. Haskins, to withdraw. Ms. Silmon has since continued without an attorney in both her Chapter 7 case and the adversary proceeding.

Four proofs of claims, all for unsecured debts, have been filed in Ms. Silmon's case. Two of those four, (one for $68 and one for $1,040.60) were filed prior to the bar date. The other two, one for $10,813.27 by Worldwide Asset Purchasing and the other by Arrow Financial Services for $3,413.41, were filed after the bar date.

On January 11, 2007, the debtor filed a motion requesting that her bankruptcy case be closed; that the trustee's application to employ a real estate agent be denied; that the joint motion to approve compromise filed in the adversary proceeding be denied; that the trustee be directed to return the $3,000 she has paid him pursuant to their yet approved settlement minus the $1,108.69 that will be required to pay the two timely filed claims; and that all "actions against" her assets be discontinued. <u>Objection to Application to Employ K. Oliver & Associates, Inc. as Real Estate Agent/Appraiser and Objection to Motion to Approve Compromise and Debtor's Request to Close Bankruptcy Case and Refund Remaining Funds to Debtor</u> (Proceeding No. 57).

On January 12, 2007, and February 21, 2007, the debtor filed separate written objections to the two late filed claims. By orders entered on February 23, 2007, and March 30, 2007, the Court sustained the debtor's objections to those claims to the extent that both were allowed only as tardily filed claims to share in any distribution after payment of timely filed claims pursuant to 11 U.S.C. § 724(a)(3).

## B. Conclusions of Law

### 1. The Debtor's Objection to the Motion to Approve Compromise and the Debtor's Request to Close the Bankruptcy Case and Refund Remaining Funds

Ms. Silmon's January 11, 2007, motion is based on the misunderstanding that only timely filed claims may be paid by the trustee and that the trustee, therefore, is

4

Case 05-11298-BGC7    Doc 85    Filed 09/14/07    Entered 09/14/07 14:42:39    Desc Main
Document      Page 4 of 9

entitled to nothing more from her or her assets since she has paid him more than enough to satisfy the $1,108.69 in claims that were filed prior to the expiration of the bar date. That misunderstanding lead Ms. Silmon to conclude that the trustee does not need to hire a real estate agent, or sell her homestead, or collect the remainder due under the settlement agreement, and that the trustee should refund the excess of her payment over $1,108.69.

Section 724(a)(3) of the Bankruptcy Code specifically requires the trustee to pay tardily filed claims to the extent anything remains after satisfaction of priority claims and timely filed non-priority claims. That subsection reads:

> (a) Except as provided in section 510 of this title, property of the estate shall be distributed – (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(c) of this subsection...."

11 U.S.C. § 724(a)(3).

In addition, the debtor may not have considered that the trustee has undoubtedly incurred expenses, including attorney's fees, which will have to be paid as administrative expenses from the estate prior to the payment of even timely filed non-priority claims. Therefore, payment of those administrative expenses in addition to the timely filed non-priority claims, not to mention tardily filed claims, will require more than the $1,108.69 which Ms. Silmon claims is all that the trustee is entitled to keep.

Since the legal basis of Ms. Silmon's January 11, 2007, motion is erroneous, and she has proffered no additional grounds for granting any of the relief requested in that motion as it relates to the compromise, closing the case, or refund of funds paid to the trustee, the motion is due to be denied.

## 2. The Trustee's Application to Employ a Real Estate Agent and the Debtor's Objection to that Application

The remainder of Ms. Silmon's motion relates to the trustee's application to employ a real estate agent. It is the trustee's prerogative to sell the home, pursuant to section 363(b)(1), after notice and a hearing, and to do so, pursuant to 363(f), free and clear of MidFirst's mortgage, for the benefit of the unsecured creditors who have filed claims in Ms. Silmon's case, whether those were filed before or after the bar date. That does not mean that the trustee may sell Ms. Silmon's home at any price, or that a sale of Ms. Silmon's home will necessarily occur. Certainly, it would be unfair for the Court to permit Ms. Silmon to be dispossessed of her home by a trustee's sale which will generate no significant payment to unsecured creditors; however, the Court is confident that the trustee would not sell Ms. Silmon's home unless he concludes that a sale will result in a significant distribution to those unsecured claimants. Those considerations

5

are however speculation at this time. Hiring a real estate agent is merely the first step in the process, and is necessary, from the trustee's standpoint, for evaluating what the sale may bring and establishing a price which will accomplish the desired goal, which is a distribution to unsecured, non-priority claimants. Based on these conclusions, the Court finds that the trustee's motion to employ a real estate agent is due to be granted and Ms. Silmon's objection to the application should be overruled.

### 3. MidFirst's Motion for Relief from Stay

Section 362(d) of the Bankruptcy Code reads:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if--

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

11 U.S.C.A. § 362(d).

The hearings on the application to employ and on MidFirst's relief from stay motion left several questions unanswered. The answers to those questions may affect the trustee's ability to sell the real estate and what process he must go through to do that. Specifically, the documents attached to MidFirst's motion reflect that the mortgage and note were not executed by Ms. Silmon alone, but were also executed by another individual, Mr. Kevin Hampton. Mr. Hampton and Ms. Silmon were not married to each other when those documents were executed. From these documents, the Court assumes that at that time Mr. Hampton owned an interest in Ms. Silmon's homestead.

At the hearing on MidFirst's motion, Ms. Silmon represented that she has married since filing her petition. She did not say who she married. Whether it was Mr. Hampton or not, an issue remains with respect to what interest, if any, Mr. Hampton has in the property. And if he has an interest, the trustee will have to satisfy section 363(h), which, among other things, requires that, "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners...." 11 U.S.C. § 363(h)(3).

6

MidFirst did not file a "Fact Summary for Motion for Relief From Automatic Stay in Chapter 7 and 13 Cases" along with its relief from stay motion as is required by Administrative Order 04-03, entered by this Court on August 17, 2004. Furthermore, Midfirst did not offer any evidence in support of its motion, although the movant has the burden of making an initial showing of "cause" for relief from the stay under section 362(d). In re Powell, 223 B.R. 225, 232 (Bankr. N.D. Ala. 1998). If the movant fails to make an initial showing of cause, the motion should be denied without further consideration. Capital Communications Federal Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2nd Cir. 1997), cert. denied, 522 U.S. 1117 (1998). If the movant makes that initial showing, the burden falls on the debtor with respect to all other issues except for the issue of the debtor's equity in the collateral, which remains on the movant throughout. 11 U.S.C. § 362(g)(1) & (2).

### a. Subsection 362(d)(2)

The parties do not agree on the issue of the debtor's equity in her homestead. The trustee contends that there is equity in the property. MidFirst contends otherwise. Neither offered any evidence. Consequently, there is no evidence in the record to support the conclusion that there is no equity in the property, or that MidFirst's interest is not adequately protected by such equity. And since MidFirst had the burden of proving that there was no equity or that it was not adequately protected, its motion must fail under subsection 362(d)(2) for those reasons.[3]

### b. Subsection 362(d)(1)

Of course, MidFirst could argue that there is "cause" to grant the motion independent of the above. In that regard, it was represented that the debtor had not made her last three payments and has not reaffirmed the mortgage debt. While that might constitute "cause" for relief from the stay as between MidFirst and the debtor, it does not, at this stage of these proceedings, constitute "cause" for relief from the stay as between MidFirst and the trustee. The trustee has a duty to liquidate the property of the bankruptcy estate, and he is making an effort to sell the property for the benefit of unsecured creditors. He does not have control over whether the debtor makes her payments or reaffirms the debt. As such, the trustee is entitled to a reasonable time to determine whether a sale of the property will result in a dividend to unsecured creditors and, if such a result may be anticipated, to effectuate that sale. All that MidFirst is entitled to, as between it and the trustee, is the value of its collateral, and to have its debt satisfied from the proceeds of any sale by the trustee. Absent evidence that the value of its collateral is eroding, or that the debtor has no equity in the property, which

---

[3] Subsection 362(d)(2) requires that <u>both</u> subsection 362(d)(2)(A), the equity portion, and subsection 362(d)(2)(B), the reorganization portion, be satisfied for stay relief to be granted. Because the equity portion was not satisfied, the Court need not consider the reorganization subsection.

7

MidFirst has not produced, it is not entitled to relief from the stay at the present time for "cause" pursuant to subsection 362(d)(1).

On the other hand, the Court is well aware that if the debtor continues not to make her payments and the trustee efforts to sell the property prove lengthy, MidFirst may be harmed. And that is true even if MidFirst is oversecured now as the continued accretion of interest on its debt will gradually erode whatever equity there may be in the property. Consequently, at some point a sale of the property will not produce any money for unsecured creditors because the sale proceeds will be consumed completely by MidFirst's increasing debt. A sale of the property <u>after</u> that point will be insufficient to satisfy the interest which accrues on MidFirst's debt <u>after</u> that point.

The trustee is, of course, sensitive to these concerns and cognizant that his opportunity to sell the property is not unlimited. He will no doubt act expeditiously. Indeed, counsel for the trustee suggested at the hearing that MidFirst's motion be continued for 30 days after the Court's approval of his employment of the real estate agent, which, in his estimation, would be ample time, if the debtor cooperates in allowing the agent access to the property for the purpose of evaluating the property for purposes of sale. The Court agrees, and therefore, in lieu of denying MidFirst's motion now, will continue it for approximately 30 days.[4]

### 4. Ms. Silmon's Cooperation with the Trustee

At the hearing on MidFirst's relief from stay motion, counsel for the trustee asserted that Ms. Silmon refused to allow his real estate agent onto her property, or into her home, for the purpose of evaluating it for sale. Ms. Silmon did not dispute that assertion. Pursuant to 11 U.S.C. § 704(1), it is the trustee's duty to, "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest...." <u>Id</u>. Pursuant to 11 U.S.C. § 521(a)(3), it is the debtor's duty to, "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title," <u>id</u>., and, pursuant to 11 U.S.C. § 521(a)(4), to "surrender to the trustee all property of the estate...." <u>Id</u>. In light of these statutes, Ms. Silmon must allow the trustee and his real estate agent access to her homestead, otherwise she may be obstructing the trustee from performing his statutory duties to liquidate property of the estate, which includes that homestead; obstructing the trustee from expeditiously closing the estate; violating her statutory duties to cooperate with the trustee as necessary to enable him

---

[4] The Court finds that the deadline established by section 362(e)(2) of the Bankruptcy Code for deciding this matter should be extended for good cause. The Court finds that it is good cause to extend the deadline in order to save MidFirst the time, effort and money of filing another motion for relief once it determines from the trustee what his firm plans are with respect to selling or abandoning Ms. Silmon's homestead.

8

to perform his duties; and violating her statutory duties to surrender property of the estate to the trustee, which includes her homestead.

      In fairness to Ms. Silmon, it seems apparent that her reluctance to cooperate with the trustee was related to her misunderstanding of the law. From this memorandum, it should now be clear to her that her interpretation of the law was wrong, and that the trustee is bound to pay both timely and tardily filed claims. Consequently, she no longer has any reasonable excuse for not allowing the trustee and his real estate agent reasonable access to her property for the purpose of evaluating it for sale. And if a decision is made to sell the property, she does not have any reasonable excuse for not allowing the property to be shown to prospective purchasers.

      A separate order will be entered in conformity with this Memorandum Opinion.

      Dated: September 14, 2007        /s/Benjamin Cohen
                                                                   BENJAMIN COHEN
                                                                   United States Bankruptcy Judge

BC:pb